And we will move to case 1815841, Karasek, and I hope that's the way you say it, versus the Regents of the University of California. Good morning, Your Honor. Alexander Zolkin on behalf of Appellants. You're representing Karasek? Karasek, okay. Karasek Commons and Butler. Karasek Commons and Butler. Yes, Your Honor. And I'd like to reserve two minutes for rebuttal, please. Okay. Thank you. Just watch the clock. As you see, we just kind of get after it, forget what the clock says. I've noticed, Your Honor. Your Honors, Title IX prohibits discrimination on the basis of gender in educational institutions. The Supreme Court has acknowledged that a recipient's deliberate indifference to one student's sexual harassment of another constitutes intentional discrimination on the basis of sex prohibited by Title IX. Traditionally, an educational institution is liable under Title IX where it has actual knowledge of sexual misconduct and acts with deliberate indifference in response. However, the Supreme Court has also outlined an avenue for liability under Title IX when an educational institution maintains a policy of indifference or intentionally violates the statute. So, that's the last issue? Yes, Your Honor. All right. What issues do you want to take up first? I'm happy to discuss whatever this Court wants. I'll start with conduct. And in that context, Title IX liability flows from an educational institution's deliberate indifference to a report of sexual misconduct. Let me ask you this, which is of some worry to me, and I expect it's of some worry to my colleague. What deference do I give to an appeal from a dismissal on Rule 12b-6 and a motion for summary judgment? All right. So, I believe this Court... Can we... Are you suggesting in this particular matter that there are fact differences? Yes, Your Honor. I think appellants have raised the question of fact as to whether this educational institution... Was there anybody disputing the facts the whole time? I'm sorry, Your Honor? It doesn't seem to me anybody's disputing the facts. All we're doing is trying to determine whether those undisputed facts, because the university's really never even suggested there are other facts. There may in the future, but they haven't here, that they don't meet the standard. Isn't that what they've done? That's what the district court held, was that these facts don't rise to the level of deliberate indifference. And that that was their argument, right? That was their argument. But, Your Honor, what I would... And further, how is that distinguishable from Odin and the cases that are similar? Well, Your Honor, in Odin, I think Odin is very distinguishable from the instant matter. In Odin, the victim reported her assault by a professor. She was immediately provided accommodations. She was provided, I believe, a caseworker to help her through the process. In Odin, the victim sued, claiming deliberate indifference based on a nine-and-a-half-month delay in resolving her report. However, she contributed to that delay. She informed the educational institution that she was seeking legal representation. So are we supposed to be looking at the plaintiff's conduct or the victims in this situation? Should we always look at their conduct in this situation? No. I think what you... The proper focus is on the educational institution's conduct. And in Odin, what this court said was that delay was justified because of the fact that the victim moved away from the Marianas Islands and was seeking legal representation. But in Odin, there was a nine-month delay. And in this case, we only have, with Aztecay, an eight-and-a-half-month delay. Yes, Your Honor, but I believe the focus is on... The delay is only unreasonable when it prejudices Kay. And the record permits an inference that the delay was a deliberate attempt to sabotage the complaint or the orderly resolution, right? And I believe this was a deliberate, or at least there's a question of prejudice that resulted in Kay's delay. She was forced to endure a sexually hostile environment on campus by virtue of the fact that her assailant was on campus, was going to the Cal Democrats Club that she avoided because the school was taking its time in resolving this complaint. The school didn't put any interim measures to protect Ms. Karasik on campus while they were delaying and resolving her complaint. But there was no failure to take any action whatsoever for weeks or months or years like in Odin, was there? There was, Your Honor. They had actual knowledge of Karasik's sexual... But they were doing stuff about it. They were just using, if you will, a different resolution process than you want to be used. Well, I would push back on the fact that they were doing something about it. They received actual knowledge in February of 2012 and did nothing until April of 2012. And in the meantime, Ms. Karasik's assailant sexually assaulted two more female students while they were doing nothing. So I don't think it's fair to say that they were engaged in some sort of process. They just happened to wait. They didn't do anything for several months. Actually, for one month, isn't it the case that after one month, they met with him and he accepted the sanction that was given? Wasn't that the case? That's not correct, Your Honor. They received actual knowledge in February of 2012. The Title IX coordinator met with Ms. Karasik in April of 2012. She never informed Ms. Karasik that she needed to provide a written formal complaint in order to Ms. Karasik did that on her own, thinking it'd probably be a good idea to get this in writing. So she emailed a report in May of 2012. They didn't meet with her assailant to actually investigate the claim until, I believe, it was October. I have it in my notes. September of 2012 was when they first met with her assailant. What is the standard as it relates to deliberate indifference? It seems to me that what you're suggesting is that what they did was deliberately indifferent. Yet, when I look at deliberate indifference as it relates, for instance, in a prison context where the doctors are suggesting one thing is the result of the problem that happened in the prison, and it's just a matter of a, if you will, a disagreement as to what medical procedure ought to be used, there is no deliberate indifference, and one is thrown out on summary judgment. And I guess, again, I keep bringing up, what kind of things make it deliberately indifferent? So, Your Honor, several courts have discussed what makes a response deliberately indifferent. What courts that I should follow have discussed it? There are none, correct? There are none that have specifically discussed the contours of deliberate indifference that are binding on this court. However, courts... We're only deciding whether deliberate indifference is proven under Davis. Davis would be the only real, if you will, ruling that I have to look at, right? That's correct, Your Honor. And in Davis, the court defined deliberate indifference as clearly unreasonable. And so the question then becomes, was this response clearly unreasonable? And if this court looks to... In the light of the known circumstances. In light of the known circumstances, correct, Your Honor. And if this court looks to how other courts have interpreted what is a clearly unreasonable... Well, hold on. Don't move forward. Just explain to me, then, what are the facts from this case that were known that established that? So, with respect to Ms. Karasik, she reported, or they received actual knowledge of her sexual assault, her and two other women's sexual assaults, in February of 2012. They did nothing for several months. Ms. Karasik met with the Title IX coordinator... Dude, nothing is not exactly correct. Ambrosio reported immediately about that, right? After the President reported it to her? She met with the club president and... Instructions back to the President to relay? Yes. But they didn't... She didn't do anything. But she didn't begin investigating the complaints. And she discouraged the club president. Then, de Guzman met with T.H. a month after the formal report... Right. Which would have been... Took action against T.H. while in school, unlike in Williams. And Oldham met with T.H. again at the beginning of the next semester. And the response was in the context of ongoing communication with the club members. And your client never saw T.H. except across campus. And at Cal Democrat Club events. But, Your Honor, the facts of the case, I think, rise to the level of deliberate indifference because, for one, that whole process that you described took eight and a half months. Well, I understand. But then I look at what happened in Oldham, and there was nine months. Because of the victim's own contribution to the delay. It wasn't the school. It wasn't educational institution that caused the delay. It was the victim. But, Your Honor, I also would like to discuss... Don't you think it gets to be sort of a slippery slope there when we start impugning responsibilities on the victims in this context or in others? A slippery slope when you're impugning responsibilities to the victim? As to how their investigation is supposed to go? Well, I think... I'm sorry. I'm not following the question, Your Honor. Well, are we going to be ensuring... Let's just say that a victim of sexual assault decides that she's too traumatized by the events. That she decides, while making the initial disclosure, not wanting to talk to these folks for some time. Should that then be impugned on the time reference on the school? I think the school's responsibility is to respond in a manner that's not clearly unreasonable. And if they're going to do something that's going to harm a victim, harm them psychologically by moving forward, then I think it's reasonable for them to delay. But that's not the case here. Here we have When you say victims, you may want to talk about the victim you're talking about there, because I don't think all of these are in the same category. Correct. But I do... I think... I mean, that's why I took K. I took... The only reason I say K, because I thought about Karasek, Karasek. Correct. Karasek, yeah. So I used K, so I didn't have to make that problem. But it just seems to me that you think about who you're going to talk about, because each one is not similar. Correct, Your Honor, but they do have similar themes throughout. For example, there was a 13-month delay in Common's case from report to resolution. Now, the university tries to justify that by saying they stayed the investigation pending the criminal process. However, the court in Williams, the 11th Circuit, addressed that argument and said, it's not appropriate to stay in a school investigation for the pendency of a criminal investigation, as well as the Department of Education has issued guidelines, guidance documents that have similarly said, it's not okay to stay the investigation pending a criminal investigation. I hope that you get the Department of Education regulations, because it seems to me that that's the big part of your complaint. If you put together Department of Education regulations, you put together your own regulations from the school, that the failure to comply with those should be deliberate indifference. That seems to be your major, and yet you haven't got there till now. Yes, Your Honor. I guess I'm trying to figure out if that's really your argument. Why does Gerber at 291, 292 say failure to comply with the DOA regulations does not establish deliberate indifference? Because, Your Honor, what Gebser was concerned with was whether the failure to provide a notice of the policy of sexual misconduct could substitute for actual knowledge and deliberate indifference. In other words, there was no actual knowledge of a report of sexual misconduct and deliberate indifference in that case. The plaintiff was trying to argue that the failure to provide notice of their policy could amount to liability. And what the court said was no, just because they violated this one regulation with respect to providing notice of the policy, that doesn't get around the actual knowledge and deliberate indifference inquiry. Well, it seems to me, am I wrong when I say I'm deciding this under Davis, deliberate indifference? The DOE, even the California University's guidelines can guide my analysis, but it's not controlling, and no court has ruled it's controlling. And so, therefore, I'm again stuck with Davis. Can I go to there? That's correct, Your Honor. I see my time is up, but I would like to address your question. You can answer my question. Thank you, Your Honor. I think that's correct. We're not arguing that the Department of Education guidelines, that a departure from the Department of Education guidelines is dispositive of the deliberate indifference inquiry. However, just like in Meritor Savings Bank v. Vinson, where the U.S. Supreme Court looked to EEOC guidance documents similar in nature to the Dear Colleague letter and Title IX guidance documents, the court looked to those guidance documents as a body of experience and informed judgment to which courts and litigants may properly resort for guidance. I'm saying we can do the same thing here, and this court should do the same thing here because the Department of Education does constitute a body of experience and knowledge with respect to Title IX. But they're not mandatory. They're not mandatory. This court is not mandated to look at those guidance documents. I just think it's prudent. You want to make one comment about your argument, your fourth argument, because it seems to me you're arguing that this court should undertake a decision-making process which would make new law in our circuit. And it seems to me they ought to have a chance to respond. And without even talking about it, it seemed like you didn't think that was quite as important as these other issues. So I'll give you one minute to talk about it. But you've already eaten into your rebuttal time. So I'm thinking you better say something about it. I don't think that's a big issue. No, it's certainly a big issue, Your Honor. And I think the Corton-Simpson v. University of Colorado. Well, Simpson is the 10th Circuit case. The 10th Circuit case. Well, I don't have to follow those guys. You don't, Your Honor. Even though Gorsuch is a part of the panel. That might be some reason I wouldn't follow. No, I'm not going to comment on that, Your Honor. But I think the principle of Simpson where there was no actual knowledge and deliberate indifference in that case, what happened was the school was aware of sexual misconduct at football recruiting parties and turned a blind eye to it. That principle, there's no reason why that principle can't be expanded to school-wide when an educational institution generally turns a blind eye to sexual misconduct, covers it up, as we've alleged here. Thank you. Thank you, Your Honor. Did you have another question? I didn't. All right. Counselor, I gave him an extra two minutes, but don't worry. I won't be unfair to you. Thank you, Your Honor. May it please the Court. Hylin Chen on behalf of the Regents of the University of California. None of the undisputed facts here support a plausible inference that the university's response in each of these three cases amounted to an official decision not to remedy the violation. Can you address the last argument that was raised? On the official policy of indifference, Your Honor? Correct. Yes. And why this Court shouldn't follow Simpson? Well, first, there are no cases, no binding precedent that holds, and Simpson doesn't hold this either, that general knowledge of a general problem of sexual harassment on campus and the need for some improvement in policies, that that's enough to establish actual knowledge and deliberate indifference. If that were the rule, that would run squarely into conflict with the Supreme Court's guidance in Davis, which is that the deliberate indifference standard does not mean that schools can avoid liability only by purging their schools of actionable peer-on-peer harassment. And in Simpson, Simpson is completely distinguishable. There, the school had knowledge of a serious risk in a specific context, football recruiting, involving a particular group of people, folks engaged in that recruiting, and football players, and it was a program that the school funded and sponsored and facilitated and even went so far as to choose the host to show these football recruits a good time. But isn't this, aren't you really saying, judges, even if you say there's such an action, if you send that back for further study, they haven't met it. That's right, Your Honor. Isn't that what you're saying? Because my worry is, and I realize what you just said, but when I read Mansourian versus the Regents, I'm sure you know about that since you're representing the university. Yes, Your Honor. And when I read U.S. v. Maricopa County, both of those seem to think we've already got such a cause of action. Well, those cases involved an official policy and action of the university. But they don't really do that because they say, I mean, if you look at U.S. v. Maricopa County, it says, and I'm quoting the good judge, in addition to liability for deliberate indifference to known acts, an entity can also be held liable for acts of discrimination that result from its own official policy, which says to me, we've got one thing that will go one way, which is a policy we're concerned, but it goes another, that if their actions show that forever, then they've got a policy that goes a different way, and they'll be liable there. I don't dispute that, Your Honor. But in those cases, in Simpson, in Baylor, in Tennessee, in all of the cases that appellants cite to— I'm not worried about Baylor and Tennessee. I'm worried about Maricopa and Mansourian because they're binding on me. Okay. In Mansourian and Maricopa, the official policy at issue resulted in the discrimination and harassment that was severe, pervasive, and so objectively offensive as to deprive the plaintiff of educational opportunities. And that's the difference here. It was an official policy of the school that resulted in that harassment. Look what they said in Mansourian. Gebser does not make pre-litigation notice for the alleged violation of prerequisite to recovery, or if in every sexual harassment case. But proof of actual notice is only required when the alleged violation consists of a deliberate indifference to acts that do not involve the official policy of the recipient entity. And— That's exactly the action he wants to bring. And those cases, however, involved harassment by a third party, as does this case here. That's the difference. In Mansourian, that was a gender equity and athletics case where the school's official policy and practices resulted in gender discrimination affecting women on the athletic teams. That was a direct action of the university. There was no question about whether the university would be liable for the actions of others. Here, that's the question presented with the court. And here, the Supreme Court has held, and this court has held, that the standard that applies is deliberate indifference and actual knowledge. Now, if I could address another issue that appellants raise, and that is violation of the provisions of the Department of Education guidance. Not only has Gebser held that an implied private right of action under Title IX does not allow for money damages for violation of administrative enforcement guidelines, the Dear Colleague letter itself expressly states on page 4 that its requirements concern the standard for administrative enforcement and not the standard in private lawsuits for monetary damages. And the language of the guidance in the Dear Colleague letter is broader than the deliberate indifference standard. The Dear Colleague letter requires action when a school knows or should have known about harassment, whereas actual knowledge and deliberate indifference requires just that, actual knowledge. Now, to address a point that appellants raise regarding the response to Ms. Karasik's report of assault, appellants raise the allegation that she encountered TH across campus and also at club activities. But there is no allegation anywhere that she informed the university of these events. She never informed the university she saw him. She never asked for a no-contact order. And the university cannot be expected to take preventive measures under binding case law to eliminate a hostile environment when it doesn't even know one exists. Well, but didn't they make a recommendation that they shouldn't remove him from the club? That happened early on before she even reported it. That happened in February 2012, before she reported it. By the time she came forward in April 2012, TH had already left the club, had stepped down from his position. And taken as a whole, altogether, the university's response does not support a plausible inference that what they did amounted to an official decision not to remedy the situation. Williams, which appellants cite to, is distinguishable. There, there was no corrective action taken whatsoever for 11 months. And they waited four months after the criminal proceedings to start an investigation. And in that regard, Williams is also different from what happened in Comins. With respect to Ms. Comins, the university acted promptly. Within two weeks of her assault, they implemented an interim suspension, completely excluding the respondent from campus. And he was excluded from campus and subject to significant restrictions continuously for four years after that. They investigated him and they disciplined him. Can you go, oh, sorry. Go ahead. Can you go back to Karasek for a second? Because counsel talked about how Odin was very distinguishable. In that case, that individual had left the state and, in fact, had gone elsewhere. And that would explain the delay. And that we should be looking at, to a certain extent, at that factor and explaining that delay, that it's more egregious in this case because this was a policy, as he would argue, that resulted in this extreme delay, in their view. In Odin, the court did not turn its decision on the fact that plaintiff was in part responsible for part of the delay. That was not the reason why the court held that the university's response was not clearly unreasonable. Rather, the court looked at the overall response as a whole, the fact that the university took action upon learning of the assault, removing the complainant from her instructor's class, helping her get some academic accommodations, setting her up with a counselor. As a whole, taken together, that response, despite the delay, did not amount to deliberate indifference. So it's not a matter of, you know, this court did not hold in that case for a delay to be excusable. It has to somehow have been caused by the complainant herself. Let me, as long as we're on Kay, the one part of the argument which is the most worrisome to me for the university is the argument that the substance of the university's response was inequitable. I mean, T.H. participates in school functions, T.H. In fact, they ignore Kay. That looks pretty inequitable. Your Honor. I mean, that's the best. I mean, you could say they took no steps. So I got the, there's argument. I don't know whether that's deliberate indifference. But when I look at deliberate indifference on what T.H. did, I'm having, that's my toughest time for the university. You want to respond? Yes, Your Honor. The university certainly acknowledges that it could have done more to keep Ms. Karasik informed of the status of the investigation and given her opportunities to participate. And the university has made great strides since 2012 to improve its policies and practices in that regard. But those issues at most give rise to mere negligence or carelessness. That is not enough to meet the exacting standard of deliberate indifference. And there is no case law that holds that not providing another opportunity that complainant wishes she could have had to participate in itself gives rise to deliberate indifference. Okay. Then I want to change the last topic one more time. If I were to suggest that there is a cause of action to be brought here, what do I do? What do you mean, Your Honor? What is my remedy? What if I say there is a cause of action here? Is there evidence here enough to then hold the university liable? Or what is my response that I should do as a court? Well, I suppose it would be to send it back to the district court. And say to the district court, there is such a cause of action which can be brought. Is that the best I can do? I believe so. With respect to Ms. Karasik and Ms. Comins, those matters were decided on a 12b6 motion to dismiss on the pleadings. And so it would be, I suppose, a statement that they have adequately stated a cause of action. Ms. Butler. I'm just talking about the fourth cause of action. If, in fact, I find that they have a cause of action to be brought under the fourth cause of action, which is adequately plead to pre-assault Title IX claim, what is the remedy? I believe that the court would have to, in effect, implement a new rule that has never been implemented before in this court or in any cases that bind this court, which is that knowledge of a general problem of sexual assault on campus, coupled with knowledge that policies and practices could be improved, is enough to state a cause of action. We submit that is not. They have not alleged that that generalized knowledge caused sexual harassment that was so severe, pervasive, and objectively offensive as to deprive plaintiffs of educational opportunities. Counsel, in 2014, audit found that UC system failed to handle sexual assault complaints and report that only two out of 500 reports handled through formal mechanisms. Counsel, isn't there enough for someone to plead that the policy itself is problematic? No, there isn't, Your Honor. Not under the actual knowledge and deliberate and different standard, and not even under the test that is set forth in Simpson. There's simply not enough. The 2014 report came out two years after the assaults alleged in these cases. This is not a case like the one in Tubbs, which Appellant cites too, where the Office of Civil Rights did an investigation, implemented a voluntary agreement where the school agreed to take corrective action and then failed to do so, and then an assault occurred. That's not what happened here. None of those generalized deficiencies that are raised rise to the level of actual knowledge of harassment and deliberate indifference in the face of it. Thank you. It seems to me that Simpson suggests that what we're looking at in this fourth cause of action about inadequately pleading the pre-assault Title IX claim, that there would be a policy of deliberate indifference to providing adequate training or guidance that is absolutely necessary for the implementation of a specific program or policy, right? Right. And if, in fact, then the school does not have adequate training or guidance for imposing this policy, that then a cause of action could be brought. That's not right, Your Honor, because there is nothing tying this lack of adequate trainings or policies to the harassment that is alleged. There's nothing saying that because the university did not have adequate policies or trainings at the time, that that caused the assaults. But isn't that just the proof? I'm just trying to think about the tort or the cause of action itself. The cause of action, it seems, is that the university has a policy of not providing adequate training or guidance in the implementation of their program. And then the proof is thereafter that they did or they didn't. But that that is the, if you will, cause of action that they can allege in count four. But if that were the cause of action, if that were the rule, that would run squarely into Davis's statement that the deliberate indifference standard does not mean schools can avoid liability only by purging their schools of actionable peer harassment. If that were the rule, every college and university in America would be facing Title IX liability any time a sexual assault happened. And that's simply not the rule. All right. Thank you, Your Honor. Those are the questions. You went over. I'll give you one minute. Your Honor, seizing on one of your lines of inquiry, I wanted to underscore that it wasn't in just Ms. Karasik's circumstances where the process was inequitable. In Ms. Common's circumstances, the process was wholly inequitable as well. And counsel argued that that only rises to a negligence standard, perhaps. And I think we've been talking about this policy of indifference, and we've alleged all these failings. Well, the reason she said it doesn't just go to negligence is there are cases dead on that says it's got to be more than that. Right. And what I'm getting at is you can't divorce these particular circumstances from their context. And that is when you look at these general policy failings, the way in which the university responded to these particular instances squares with their general failings. This was a deliberate choice. This wasn't simply isolated instances of negligence. This is the way they did things. And, Your Honor, with respect to—oh, I see that my time is up, and I don't want to take any more time unless the court has any more questions. I did give you access and let you just wax eloquent on the last issue, so we'll stop  Thank you, Your Honor. Look, I mean, you both did a good job in your briefing. You've both done well in your argument. We really appreciate that, and we appreciate your help today because, as I said when I came out to talk to you before, good lawyers help us make good decisions. Thank you very much. Thank you, Your Honor. And at that point, this court is adjourned.
judges: Bybee, N.R. Smith, Mendoza Jr.